**JUDGE GRIESA**

# 12 CIV 3414

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                  :

HELENE HUTT, On Behalf of Herself and All
Others Similarly Situated,                  :

                             :

                        Plaintiff,    :   No. 12 Civ. _____

                             :

      - against -               :

                             :   <u>**NOTICE OF REMOVAL**</u>

MARTHA STEWART LIVING OMNIMEDIA,
INC., CHARLES A. KOPPELMAN,     :
CHARLOTTE BEERS, FRÉDÉRIC FEKKAI,
LISA GERSH, ARLEN KANTARIAN,    :
MICHAEL W. KRAMER, BILL ROSKIN,
CLAUDIA SLACIK, TODD SLOTKIN,    :
MARGARET M. SMYTH, MARTHA
STEWART, and DANIEL E. WALKER,   :

                           :

                      Defendants.  :

                             :
------------------------------------------------------------x



Defendants Martha Stewart Living Omnimedia, Inc., Charles A. Koppelman,

Charlotte Beers, Frédéric Fekkai, Lisa Gersh, Arlen Kantarian, Michael W. Kramer, Bill Roskin,

Claudia Slacik, Todd Slotkin, Margaret M. Smyth, Martha Stewart, and Daniel E. Walker

(collectively, "Defendants"), by their undersigned attorneys, hereby remove the above-captioned

action from the Supreme Court of the State of New York, County of New York (the "New York

County Supreme Court") to this Court (the "Court"), pursuant to 28 U.S.C. §§ 1441(a) and 1446.

This Court has jurisdiction pursuant to 15 U.S.C. § 78n and 28 U.S.C. § 1331.

    In support of removal, Defendants state as follows:

    1.    On April 17, 2012, plaintiff Helene Hutt ("Plaintiff") commenced an

action in the New York County Supreme Court, captioned *Helene Hutt, On Behalf of Herself and*

*All Others Similarly Situated v. Martha Stewart Living Omnimedia, Inc., Charles A. Koppelman,*

*Charlotte Beers, Frédéric Fekkai, Lisa Gersh, Arlen Kantarian, Michael W. Kramer, Bill Roskin, Claudia Slacik, Todd Slotkin, Margaret M. Smyth, Martha Stewart, and Daniel E. Walker*, Index No. 651249/2012 (the "Action"), by filing filed a Summons and Complaint.  A true and correct copy of the Complaint (the "Complaint" or "Compl.") is attached hereto as Exhibit A.

2.      The Action is styled as a putative class action brought on behalf of all shareholders of Martha Stewart Living Omnimedia, Inc. ("MSLO") to enjoin a shareholder vote scheduled to be held at the annual general meeting of MSLO shareholders on May 23, 2012. (Compl. ¶ 1.)  The Complaint alleges that the Defendants breached their fiduciary duties by disseminating a proxy statement that MSLO filed with the Securities and Exchange Commission, which Plaintiff alleges was "materially misleading and incomplete" with respect to one proposal. (*Id.* ¶¶ 2-5.)

3.      Although the Complaint carefully avoids express mention of federal law, this Court has subject matter jurisdiction over the Action because it requires the resolution of a federal question.  As the Supreme Court has explained, federal question jurisdiction will lie if a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial." *Grabel & Sons Metal Prods., Inc., v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

4.      Federal question jurisdiction exists where the vindication of a right necessarily turns on construction of federal law, even if the plaintiff has not explicitly pleaded a federal claim. *See Indeck Maine Energy, L.L.C. v. ISO New England Inc.*, 167 F. Supp. 2d 675, 690 (D. Del. 2001) (the "complaint arises under federal law because [plaintiff] has sought to present a challenge to a federally-approved tariff in the guise of a state contractual claim.").

5.      A plaintiff may not defeat federal question jurisdiction over a claim that necessarily implicates federal law merely by omitting explicit references to the dispositive

2

federal law.  *See Gamoran v. Neuberger Berman Mgmt., LLC*, Docket No. 10 Civ. 6234, 2010

WL 4537056, at *2-3 (S.D.N.Y. Nov. 8, 2010) ("Plaintiffs may not 'use artful pleading to close

off defendant's right to a federal forum'" and plaintiff's claim had a "necessary and dispositive

federal element" sufficient to establish federal jurisdiction) (citations omitted); *see also Sullivan

v. Am. Airlines, Inc.*, 424 F.3d 267, 271 (2d Cir. 2005) ("a plaintiff may not defeat federal

subject-matter jurisdiction by 'artfully pleading' his complaint as if it arises under state law

where the plaintiff's suit is, in essence, based on federal law"); *Pet Quarters, Inc. v. Depository

Trust and Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009) (where plaintiff pleaded only state

law claims, federal court had jurisdiction because allegations directly implicated actions taken by

the SEC); *Indeck*, 167 F. Supp. 2d at 690 (denying remand where plaintiffs' breach of contract

claims actually were challenges to federal tariff rules; "artful pleading doctrine does not permit

litigants to 'frustrate a defendant's right of removal by carefully pleading the case without

reference to any federal law'").

      6.     Defendants' duties and obligations with respect to MSLO's proxy

statement necessarily are governed by federal law, specifically, the Securities Exchange Act of

1934 (the "Act").  *See* 15 U.S.C. § 78 *et seq.*; *see also* 17 C.F.R. § 240.01 *et seq.*  Indeed, the

Complaint explicitly alleges that MSLO filed with the SEC "a Proxy Statement on Form

Schedule 14A" (Compl. ¶ 2), thereby invoking Rule 14a and Section 14(a) of the Act.  Section

14(a) of the Act authorizes the SEC to regulate the mechanics of proxy solicitations and the

information that must be furnished to a shareholder when a proxy is solicited.  "The purpose of

14(a) is to prevent management or others from obtaining authorization for corporate action by

means of deceptive or inadequate disclosure in proxy solicitation." *J.I. Case Co. v. Borak*, 377

U.S. 426, 431 (1964), *abrogated on other grounds by Cort v. Ash*, 422 U.S. 66 (1975).  Thus, 17

C.F.R. § 240.14a-9, promulgated under Section 14(a), prohibits solicitation of a proxy by means of a proxy statement containing false or misleading statements.

7.       Because proxy solicitations are regulated by federal law, the adequacy and effectiveness of a proxy solicitation is a federal question. *See Staehr v. Western Capital Res., Inc.*, Docket No. 10-1806, 2010 WL 4338652, at *3 (D. Minn. Sept. 24, 2010) (Noel, M.J.), *rept. and rec. adopted*, 2010 WL 4321542 (D. Minn. Oct. 26, 2010) ("since proxy solicitations are governed by Section 14(a) of the Exchange Act, a determination of Defendants' duties and obligations with respect to the Proxy Statement (sought in the declaratory judgment count) inherently requires the construction and application of federal law."). Thus, a plaintiff cannot obtain relief for a violation of SEC proxy rules without prevailing on the issue of whether those rules have in fact been violated. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005) ("It is clear that [plaintiff] cannot obtain the declaratory judgment he seeks, stating in part that [defendant] violated 47 U.S.C. § 543(d), without prevailing on the issue of whether [defendant] in fact violated 47 U.S.C. § 543(d).").

8.       The Complaint here alleges that the Defendants breached their fiduciary duties by disseminating the "Proxy Statement on Form Schedule 14A" that MSLO filed with the Securities Exchange Commission on April 9, 2012 (the "Proxy Statement"), which Plaintiff alleges was "materially misleading and incomplete" with respect to one proposal. (Compl. ¶¶ 2-5.) In particular, the Complaint alleges that Proposal 2 of the Proxy Statement, a proposed amendment and restatement of MSLO's Stock Plan to increase the Stock Plan's reserve by 4,557,272 shares, "is not fully and accurately described in the Proxy [Statement]" and "contains severe and material disclosure violations." (*Id.* ¶¶ 3, 25, 27.) Plaintiff asserts one claim against the individual defendants for "Breaches of Fiduciary Duties" and one claim against MSLO for

4

aiding and abetting such alleged breaches. (*Id.* ¶¶ 38-48.)  Although Plaintiff goes to great

lengths to avoid alleging explicitly a violation of the federal securities laws, only those laws –

namely, 15 U.S.C. § 78n – set forth the "applicable legal standards governing Defendants

herein." (*Id.* ¶ 5.)  Plaintiff demands, *inter alia*, a declaration that "the Proxy [Statement] was

issued in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful,"

an order to enjoin "Defendants from consummating the Shareholder Vote on Proposal 2, unless

and until the Company provides adequate disclosure," as well as an award of damages. (*Id.*

p. 21.)

> 9.    Although framed as state-law claims, Plaintiff's claims directly challenge

whether the Proxy Statement's disclosures comply with federal-law requirements.  In particular,

the Complaint alleges that:

- "Proposal 2 is not fully and accurately described in the Proxy.  In fact, the Proxy contains *severe and material disclosure violations* regarding the reasons for and effects of Proposal 2 and why it is in the best interest of shareholders." (*Id.* ¶ 3 (emphasis added);)

- "The dissemination of *a materially misleading and incomplete Proxy* in connection with the Shareholder Vote on Proposal 2 and the acts of the Individual Defendants … constitute a breach of Defendants' fiduciary duties to Plaintiff and the Class, *as well as a violation of applicable legal standards* governing Defendants herein." (*Id.* ¶ 5 (emphasis added);)

- "*The Proxy fails to disclose* the dilutive impact that issuing additional shares (up to 4,557,272 shares) may have on existing shareholders. It does not disclose the extent of dilution or the amount of planned additional stock repurchases." (*Id.* ¶ 27 (emphasis added);)

- "Not only is *the Proxy materially misleading and incomplete* for the reasons stated above, but the effects of Proposal 2 if approved are dramatic and merit full disclosure to Martha Stewart shareholders." (*Id.* ¶ 28 (emphasis added);) and

- "[T]he Individual Defendants have *failed to fully disclose* to Plaintiff and the Class all material information necessary to make an informed decision regarding the Proposal 2." (*Id.* ¶ 41 (emphasis added).)

5

10.     To decide Plaintiff's claims, the Court must determine whether the Proxy Statement's disclosures are adequate.  Plaintiff thus asks the Court to determine Defendants' duties and obligations under the federal securities laws and regulations concerning proxy solicitations, and, as in *Staehr*, removal is proper.  *See Staehr*, 2010 WL 4338652, at *3 ("Although the complaint does not expressly allege a violation of any specific federal statute or SEC rule related to the Proxy Statement, removal is appropriate because it is clear from the face of the complaint that the adequacy of the proxy materials, a matter governed by federal law, is a central issue in the instant case.").  Moreover, here, the Complaint explicitly recognizes the necessity and application of the Act by alleging that MSLO filed with the SEC "a Proxy Statement on Form Schedule 14A" that was materially misleading and incomplete.  (Compl. ¶¶ 2-5.)

11.     For these reasons, this Court has jurisdiction over this Action pursuant to 15 U.S.C. § 78n and 28 U.S.C. § 1331, without regard to the amount in controversy or the citizenship of the parties, and the Action is properly removable pursuant to 15 U.S.C. § 78n and 28 U.S.C. §§ 1331 and 1441.

12.     Plaintiff's Complaint sets forth more than one claim.  If either claim is outside of this Court's jurisdiction under § 1331, then as an alternative ground, this Court has supplemental jurisdiction under 28 U.S.C. § 1367, since both of the claims set forth in the Complaint are so related that they form part of the same case or controversy.

13.     A copy of all process, pleadings, and orders served upon Defendants in the Action is filed with this notice, as required by 28 U.S.C. § 1446(a).

14.     This Notice of Removal is being filed within thirty days of receipt by Defendants of the initial pleading setting forth the claims upon which the Action is based, as required by 28 U.S.C. § 1446(b).

15.     All Defendants named in the Complaint, by and through their undersigned counsel, join in this Notice of Removal.

16.     By filing this Notice of Removal, the Defendants do not waive any defenses, claims, arguments or rights of any kind.

17.     Written notice of this Notice of Removal shall promptly be given to Plaintiff and shall be filed, along with a copy of the Notice of Removal, with the Clerk of the Supreme Court of the State of New York, County of New York, as required by 28 U.S.C. § 1446(d).

WHEREFORE, Defendants pray that the above-captioned action be removed, without waiver of procedural or substantive defenses, from the Supreme Court of the State of New York, County of New York to the United States District Court for the Southern District of New York.

Dated: New York, New York
       April 30, 2012

Respectfully submitted,

FRIEDMAN KAPLAN SEILER &
ADELMAN LLP

Eric Seiler
Anne E. Beaumont (abeaumont@fklaw.com)
Steven E. Frankel
7 Times Square
New York, NY 10036-6516
(212) 833-1100

*Attorneys for Defendants*

# EXHIBIT A

**SUPREME COURT OF NEW YORK**
**COUNTY OF NEW YORK**

HELENE HUTT, On Behalf of Herself and All
Others Similarly Situated,

                Plaintiff,

      v.

MARTHA STEWART LIVING OMNIMEDIA,
INC., CHARLES A. KOPPELMAN,
CHARLOTTE BEERS, FRÉDÉRIC FEKKAI,
LISA GERSH, ARLEN KANTARIAN,
MICHAEL W. KRAMER, BILL ROSKIN,
CLAUDIA SLACIK, TODD SLOTKIN,
MARGARET M. SMYTH, MARTHA
STEWART, and DANIEL E. WALKER,

                Defendants,

**Index No.**

**CLASS ACTION COMPLAINT**

## CLASS ACTION COMPLAINT

Plaintiff Helene Hutt (the "Plaintiff"), by her attorneys, alleges upon information and belief, except as to those allegations pertaining to Plaintiff which are alleged upon personal knowledge, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.    This is a shareholder class action brought by Plaintiff individually and on behalf of shareholders of Martha Stewart Living Omnimedia, Inc. ("Martha Stewart" or the "Company") to enjoin the shareholder vote scheduled to be held at the annual general meeting of Martha Stewart shareholders on May 23, 2012 at the Company's corporate offices located at 601 West 26th Street, New York, New York 10001 (the "Shareholder Vote").

2.    On April 9, 2012, Martha Stewart filed with the Securities and Exchange Commission (the "SEC") a Proxy Statement on Form Schedule 14A (the "Proxy") in connection with the Shareholder Vote on three proposals.

1

3.     The board of directors for Martha Stewart (the "Board") recommends that its shareholders approve Proposal 2, a proposed amendment to the Martha Stewart Living Omnimedia, Inc. Omnibus Stock and Option Compensation Plan (the "Stock Plan") to increase the number of shares reserved for issuance by 4,557,272 shares of Class A Common Stock. However, according to the Form 10K Annual Report for the fiscal year ended December 31, 2011 that Martha Stewart filed with the SEC on March 6, 2012, as of December 31, 2011, the Company had 1,531,131 shares available for future issuance under the Company's Equity Compensation Plan, including Martha Stewart Living Omnimedia Omnibus Stock and Option Compensation Plan.  Moreover, Proposal 2 is not fully and accurately described in the Proxy.  In fact, the Proxy contains severe and material disclosure violations regarding the reasons for and effects of Proposal 2 and why it is in the best interest of shareholders.

4.     The Individual Defendants have violated fiduciary duties of care, loyalty and good faith owed to the public shareholders of Martha Stewart, and have acted to potentially put their personal interests ahead of the interests of Martha Stewart shareholders.

5.     The dissemination of a materially misleading and incomplete Proxy in connection with the Shareholder Vote on Proposal 2 and the acts of the Individual Defendants, as more particularly alleged herein, constitute a breach of Defendants' fiduciary duties to Plaintiff and the Class, as well as a violation of applicable legal standards governing Defendants herein.  As a result, Plaintiff alleges that she, along with all other public shareholders of Martha Stewart common stock, is entitled to enjoin the Shareholder Vote on Proposal 2 unless and until Defendants remedy their breaches of fiduciary duty.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this

County, or is an individual who has sufficient minimum contacts with New York so as to render the exercise of jurisdiction by the New York courts permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this Court because one or more of the defendants either resides in or maintains executive offices in this County, a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein and aiding and abetting the Individual Defendants' breaches of their fiduciary duties owed to Martha Stewart shareholders occurred in this County, and defendants have received substantial compensation in this County by doing business here and engaging in numerous activities that had an effect in this County.

## THE PARTIES

8.      Plaintiff is, and at all relevant times was, a continuous stockholder of defendant Martha Stewart.

9.      Defendant Martha Stewart Living Omnimedia, Inc. is a corporation duly organized and existing under the laws of the State of Delaware. Martha Stewart maintains its principal executive offices at 601 West 26th Street New York, NY 10001. Martha Stewart creates original how-to content and related products for homemakers and other consumers. The Company markets its brand name across a broad range of media and retail outlets. Martha Stewart provides information on a variety of subjects including home, cooking and entertaining, gardening, crafts, holidays, household maintenance, and weddings.

10.      Defendant Charles A. Koppelman ("Koppelman") is the Non-Executive Chairman of the Company's Board of Directors. Koppelman has served as Chairman since June 2005 and as one of the Company's directors since July 2004.

3

11.     Defendant Charlotte Beers ("Beers") has served as one of the Company's directors since March 2008. Beers also served as one of the Company's directors from 1998 to 2001.

12.     Defendant Frédéric Fekkai ("Fekkai") has served as a director of the Company since July 2009.

13.     Defendant Lisa Gersh ("Gersh") is currently the President and Chief Operating Officer of Martha Stewart. She joined the Company on June 6, 2011, and is responsible for all aspects of the Company's day-to-day operations. She also oversees the Company's businesses, which include Publishing, Broadcasting and Merchandising. Gersh has served as a director of the Company since July 2011.

14.     Defendant Arlen Kantarian ("Kantarian") has served as a director of the Company since February 2009.

15.     Defendant Michael W. Kramer ("Kramer") has served as director of the Company since 2011.

16.     Defendant Bill Roskin ("Roskin") has served as director of the Company since October 2008.

17.     Defendant Claudia Slacik ("Slacik") has served as a director of the Company since January 2011.

18.     Defendant Todd Slotkin ("Slotkin") has served as a director of the Company since March 2008.

19.     Defendant Margaret M. Smyth ("Smyth") has served as a director of the Company since January 2012.

20.     Defendant Martha Stewart ("Stewart") is Founder of Martha Stewart. Stewart has served as a director of the Company since September 2011.

21.     Defendant Daniel E. Walker ("Walker") has served as a director of the Company since December 2011.

22.     Defendants Koppelman, Beers, Fekkai, Gersh, Kantarian, Kramer, Roskin, Slacik, Slotkin, Smyth, Stewart, and Walker are sometimes collectively referred to herein as the "Individual Defendants."

<u>**SUBSTANTIVE ALLEGATIONS**</u>

**A.     Company Background**

23.     Martha Stewart, an integrated media and merchandising company, provides how-to information and lifestyle content products for homemakers in the areas of cooking and entertaining, holiday and celebrations, crafts, home, whole living, weddings, organizing, gardening, and pets. It operates in three business segments: Publishing, Broadcasting, and Merchandising. The Publishing segment engages in magazine and book publishing, and digital distribution principally through its Website, marthastewart.com. This segment offers Martha Stewart Living, a monthly publication that offers lifestyle ideas and how-to information for the college-educated woman between the ages of 25 and 54; Martha Stewart Weddings, a quarterly publication distributed primarily through newsstands that targets brides and serves as a vehicle for introducing young women to brands; Everyday Food, a digest-sized magazine that features recipes for the everyday cook along with seasonal menus, cooking instructions, suggestions for healthy and smart eating, and money saving shopping tips for women between the age of 25 to 49; Whole Living, a magazine featuring natural living content; and special interest publications. The Broadcasting segment engages in the production of television programming, the domestic

and international distribution of library of programming in existing and repurposed formats, the provision of talent services, and the operation of a satellite radio channel. The Merchandising segment consists of operations related to the design of merchandise and related packaging, promotional and advertising materials, and the licensing of proprietary trademarks in connection with retail programs conducted through various retailers and manufacturers. The company has a strategic alliance with J.C. Penney Corporation, Inc. Martha Stewart was founded in 1996.

24.     According to the Form 10K Annual Report for the fiscal year ended December 31, 2011 that Martha Stewart filed with the SEC on March 6, 2012, as of December 31, 2011, the Company had 1,531,131 shares available for future issuance under the Company's Equity Compensation Plan, including Martha Stewart Living Omnimedia Omnibus Stock and Option Compensation Plan.

**B.      The Materially Misleading and Incomplete Proxy**

25.     On April 9, 2012, Martha Stewart filed the Proxy with the SEC, informing shareholders of the Shareholder Vote on a number of proposals, including Proposal 2. According to the Proxy, Proposal 2 is a proposed amendment and restatement of the Company's Stock Plan to increase the Stock Plan's reserve by 4,557,272 shares.

26.     In particular, Proposal 2 in the Proxy states, in relevant part:

**PROPOSAL 2**
**APPROVAL OF AN AMENDMENT TO THE**
**OMNIBUS STOCK AND OPTION COMPENSATION PLAN**

We are also asking stockholders to approve an amendment to the Martha Stewart Living Omnimedia, Inc. Omnibus Stock and Option Compensation Plan to increase the number of shares available for award by 4,557,272 shares of Class A Common Stock. The Stock Plan was approved by the Board on April 1, 2008 and became effective upon the approval by stockholders at the Annual Meeting of Stockholders held on May 20, 2008.

In March 2012, the Board, upon the recommendation of the Compensation Committee, adopted, subject to stockholder approval, the amendment providing for the increase in order to give the Company the continued ability to grant a variety of equity awards as a valuable tool to help attract and retain employees and compensate members of the Board. The amendment effecting the share increase will only become effective if Proposal 2 is approved by the affirmative vote of a majority of the total voting power present in person or represented at the Annual Meeting. If the amendment to the Stock Plan is not approved, the Stock Plan will continue with the current share limits.

The closing price of the Class A Common Stock on April 2, 2012 was $3.82.

**General**

The Stock Plan is designed to promote our success and enhance our value by linking the interests of our officers, employees and directors to those of our stockholders and by providing participants with incentives for outstanding performance. The Stock Plan is further intended to provide flexibility in our ability to motivate, attract and retain employees and directors upon whose judgment, interest and special efforts our business is largely dependent.

A total of 10,000,000 shares of Class A Common Stock were originally available for issuance under the Stock Plan. As of March 28, 2012, the Stock Plan had approximately 1,442,728 shares of Class A Common Stock available for issuance under the Stock Plan. Although there were some awards outstanding under stock incentive plans that preceded the Stock Plan, no new awards may be made under any of those plans.

The Stock Plan contains a number of provisions that have been identified as important compensation and corporate governance best practices, including:

- The Stock Plan only has fixed number of shares authorized for issuance. It is not an "evergreen" plan. When the Company wants to increase shares available for award as it is doing now, it must seek specific stockholder approval.
- The maximum number of shares of the Class A Common Stock available for issuance under the Stock Plan will be reduced by one share for every one share issued pursuant to a stock option, stock appreciation right, restricted stock or RSU.
- Stock options and stock appreciation rights must be granted with an exercise price of at least 100% of the fair market value on the date of grant.
- Repricing of stock options and stock appreciation rights is prohibited unless stockholder approval is obtained.
- The ability to automatically receive replacement stock options when a stock option is exercised with previously acquired shares of Class A Common Stock or so-called "stock option reloading" is not permitted.

7

**Description of the Stock Plan**

The following is a summary of the principal features of the Stock Plan. This summary, however, does not purport to be a complete description of all of the provisions of the Stock Plan. It is qualified in its entirety by reference to the full text of the Stock Plan and the proposed amendment thereto. Copies of the Stock Plan and the proposed amendment to increase the number of shares are attached to this Proxy Statement as Appendix A.

**Administration**

The Compensation Committee administers the Stock Plan with respect to persons who are subject to Section 16 of the Securities Exchange Act of 1934 and awards intended to qualify as "performance-based compensation" under Section 162(m) of the Internal Revenue Code of 1986, as amended (the "Code"). The Compensation Committee or a separate committee of one or more directors of the Company appointed by the Board (what we refer to currently as the "Equity Committee") administers the Stock Plan with respect to all other persons and awards. The Stock Plan administrator has complete discretion, subject to the provisions of the Stock Plan, to authorize the grant of stock options, restricted stock, RSUs and stock appreciation rights awards under the Stock Plan. However, only the full Board administers the Stock Plan with respect to all awards granted to non-employee directors.

**Eligibility and Types of Awards Under the Stock Plan**

The Stock Plan permits the granting of stock options, stock appreciation rights, RSUs and restricted stock by the Stock Plan administrator. Stock appreciation rights may be awarded in combination with stock options or restricted stock, and such awards will provide that the stock appreciation rights will not be exercisable unless the related stock options or restricted stock are forfeited. Restricted stock may be awarded in combination with nonstatutory stock options, and such awards may provide that the restricted stock will be forfeited in the event that the related nonstatutory stock options are exercised.

Employees (including executive officers) and consultants of the Company and any parent, subsidiary or affiliate of the Company are eligible to participate in the Stock Plan. We cannot determine the actual number of individuals who will receive grants under the Stock Plan because eligibility for participation in the Stock Plan is in the discretion of the Compensation Committee (or such other separate committee). The Stock Plan also provides for the grant of awards to non-employee directors.

**Share Reserve**

The aggregate number of shares of Company Class A Common Stock can be issued under the Stock Plan is currently 10,000,000 shares (subject to such increase as will occur if this Proposal 2 is approved by the stockholders). If awards under the Stock Plan are forfeited or terminate before being exercised, then the shares underlying those awards will again become available for awards under the Stock Plan. Stock appreciation rights will be counted in full against the number of shares available for issuance under the Stock Plan, regardless of the number of shares issued upon settlement of the stock appreciation rights. In the event of a subdivision of the Company's outstanding shares, a stock dividend, a dividend payable in a form other than shares in an amount that has a material effect on the price of shares, a recapitalization, a combination or consolidation of the outstanding shares (by reclassification or otherwise) into a lesser number of shares, an extraordinary corporate transaction, such as any merger, consolidation, separation (including a spin-off), any reorganization or any partial or complete liquidation of the Company, the Stock Plan administrator will, in its discretion, make appropriate adjustments to the number of shares and kind of shares or securities issuable under the Stock Plan (on both an aggregate and per-participant basis) and under each outstanding award, the exercise price of outstanding options and stock appreciation rights, any applicable performance-based vesting provisions set forth in outstanding awards, and any other term or provision of the Stock Plan or any outstanding award necessary to ensure as best as reasonably possible that there is no increase or decrease in the value of awards that may be issued under the Stock Plan or the value of any outstanding award.

Under the Stock Plan, no employee, consultant, employee director or, with respect to shares of stock or stock units in lieu of directors' fees, non-employee director, may be awarded any of the following during any fiscal year: (i) stock options covering in excess of 1,500,000 shares; (ii) restricted stock and RSUs covering in excess of 1,500,000 shares; or (iii) stock appreciation rights covering in excess of 1,500,000 shares; provided that if any person provides services to the Company, or any parent, subsidiary or affiliate of the Company, in more than one role and each such role would separately make such person eligible for grants under the Stock Plan, then the foregoing limits shall apply separately to each such role.

The Board may, in its sole discretion, permit non-employee directors to elect to receive all or a specified portion of their directors' fees in fully vested shares of Class A Common Stock or stock units based on the fair market value of the shares on the date any directors' fees would otherwise be paid.

Each non-employee director may only be granted awards under the Stock Plan covering 200,000 or fewer shares per fiscal year; provided that, any awards received in consideration of such non-employee director's services as a consultant

and any shares or stock units received in lieu of all or any portion of the director's fees will not count against such limit.

## Options

The Stock Plan administrator may grant nonstatutory stock options or incentive stock options (which are entitled to potentially favorable tax treatment) under the Stock Plan. However, the Stock Plan administrator does not have the authority to grant stock options that automatically provide for the grant of new stock options upon their exercise. The number of shares covered by each stock option granted to a participant will be determined by the Stock Plan administrator.

Stock options granted under the Stock Plan generally vest and become exercisable either (a) over a period of time (e.g., three years), subject to the participant's continued service through each vesting date, or (b) upon the satisfaction of performance goals established by the Stock Plan administrator.

The stock option exercise price is established by the Stock Plan administrator and must be at least 100% of the fair market value of a share on the date of grant (110% for incentive stock options granted to stockholders who own more than 10% of the total outstanding shares of the Company, its parent or any of its subsidiaries). Repricing of stock options is prohibited unless stockholder approval is obtained. Consistent with applicable laws, regulations and rules, payment of the exercise price of stock options may be made in cash (including by check, wire transfer or similar means), by cashless exercise (broker assisted or net exercise), by surrendering or attesting to previously acquired shares, or by any other legal consideration. Unless otherwise provided by the Stock Plan administrator, stock options will generally expire three months following a termination for any reason other than death, disability or cause; 12 months following a termination for death or disability; and immediately following a termination for cause. The term of a stock option shall not exceed 10 years from the date of grant (five years for incentive stock options granted to stockholders who own more than 10% of the total outstanding shares of the Company, its parent or any of its subsidiaries).

## Restricted Stock

The Stock Plan administrator may award restricted stock under the Stock Plan. Restricted stock is shares that are subject to forfeiture. Participants may be required to pay cash or other legal consideration to the Company at the time of grant of restricted stock, but the Stock Plan does not establish a minimum purchase price for shares awarded as restricted stock. The number of shares of Class A Common Stock associated with each restricted stock grant is determined by the Stock Plan administrator. The Stock Plan administrator may provide that restricted stock grants be subject to time-based vesting or vesting upon satisfaction of performance goals and/or other conditions, or be fully vested at the

time of grant. Restricted stock will generally vest on the same basis as stock options.

## Restricted Stock Units

The Stock Plan administrator may award RSUs under the Stock Plan. An RSU is a bookkeeping entry that represents a share of Class A Common Stock. Participants are not required to pay any consideration to the Company at the time of grant of an RSU award. The number of shares of Class A Common Stock covered by each RSU award will be determined by the Stock Plan administrator. The Stock Plan administrator may provide that RSU awards be subject to time-based vesting or vesting upon satisfaction of performance goals and/or other conditions, or be fully vested at the time of grant. When the participant satisfies the conditions of the RSU award, the Company will pay the participant cash or shares or any combination of both to settle the vested RSUs. Conversion of the RSUs into cash may be based on the average of the fair market value of a share over a series of trading days or on other methods. RSUs will generally vest on the same basis as stock options.

## Stock Appreciation Rights

The Stock Plan administrator may grant stock appreciation rights under the Stock Plan. The number of shares of Class A Common Stock covered by each stock appreciation right will be determined by the Stock Plan administrator. The exercise price of a stock appreciation right is established by the Stock Plan Administrator and may not be less than 100% of the fair market value of a share on the date of grant. Repricing of stock appreciation rights is prohibited unless stockholder approval is obtained. The Stock Plan Administrator may provide that stock appreciation rights be subject to time-based vesting or vesting upon satisfaction of performance goals and/or other conditions, or be fully vested at the time of grant. Stock appreciation rights will generally vest on the same basis as stock options. Upon exercise of a stock appreciation right, the participant will receive payment from the Company in an amount determined by multiplying (a) the difference between (i) the fair market value of a share on the date of exercise and (ii) the exercise price times (b) the number of shares with respect to which the stock appreciation right is exercised. Stock appreciation rights may be paid in cash or shares or any combination of both. Unless otherwise provided by the Stock Plan administrator, stock appreciation rights will generally expire three months following a termination for any reason other than death, disability or cause; 12 months following a termination for death or disability; and immediately following a termination for cause. The term of a stock appreciation right shall not exceed 10 years from the date of grant.

**Performance Goals**

Awards under the Stock Plan may be made subject to performance conditions as well as time-vesting conditions. Such performance conditions may be established and administered in accordance with the requirements of Code Section 162(m) for awards intended to qualify as "performance-based compensation" thereunder. If awards with performance conditions are intended to comply with Code Section 162(m), the applicable performance goals will be composed of an objective formula or standard determined by the Stock Plan administrator with respect to each performance period utilizing one or more of the following factors and any objectively verifiable adjustment(s) thereto permitted and pre-established by the Stock Plan administrator in accordance with Code Section 162(m): (i) operating income; (ii) earnings before interest, taxes, depreciation and amortization; (iii) earnings; (iv) cash flow; (v) market share; (vi) sales, (vii) revenue; (viii) expenses; (ix) cost of goods sold; (x) profit/loss or profit margin; (xi) working capital; (xii) return on capital, equity or assets; (xiii) earnings per share; (xiv) economic value added; (xv) price/earnings ratio; (xvi) stock price; (xvii) price/earnings ratio; (xviii) debt or debt-to-equity; (xix) accounts receivable; (xx) writeoffs; (xxi) cash; (xxii) assets; (xxiii) liquidity; (xxiv) operations; (xxv) intellectual property (e.g., patents); (xxvi) product development; (xxvii) regulatory activity; (xxviii) manufacturing, production or inventory; (xxix) mergers, acquisitions, investments or divestitures; (xxx) financings and/or (xxxi) customer satisfaction, each with respect to the Company and/or one or more of its parent, subsidiaries, affiliates or operating units. Awards to participants who are not subject to the limitations of Code Section 162(m) may be determined without regard to performance goals and may involve the Stock Plan administrator's discretion.

**Transferability of Awards**

Stock options, stock appreciation rights, unvested restricted stock and RSUs will not be transferable other than by will or by the laws of descent and distribution, except as otherwise permitted by the Stock Plan administrator for all awards other than incentive stock options. This prohibition on transfer will not prevent a participant from designating a beneficiary to exercise the rights of any award and to receive any property distributable with respect to any award upon the death of the participant.

**Acceleration of Awards upon a Change in Control**

In the event of a change in control of the Company as defined in the Stock Plan, the vesting of all awards outstanding upon the consummation of the change in control will accelerate such that all awards will be fully vested on such date, except as otherwise provided in an applicable award agreement. Otherwise, except as otherwise provided in the applicable award agreement, the Stock Plan administrator may provide for the assumption of outstanding awards, the

substitution of outstanding awards with substantially the same terms by the surviving corporation or its parent, or the continuation of outstanding awards by the Company, in all cases without participant consent.

**Amendment and Termination**

The Board may amend the Stock Plan at any time and for any reason, provided that any such amendment will be subject to stockholder approval to the extent such approval is required by applicable laws, regulations or rules. The Board may terminate the Stock Plan at any time and for any reason. The Stock Plan will terminate on March 31, 2018 unless re-adopted or extended by the stockholders prior to or on such date. The termination or amendment of the Stock Plan may not adversely affect any award previously made under the Stock Plan.

**Federal Income Tax Consequences**

The following is a brief summary of the U.S. federal income tax consequences applicable to awards granted under the Stock Plan based on federal income tax laws in effect on the date of this Proxy Statement. This summary is not intended to be exhaustive and does not address all matters which may be relevant to a particular participant based on his or her specific circumstances. The summary expressly does not discuss the income tax laws of any state, municipality, or non-U.S. taxing jurisdiction, or the gift, estate, excise (including the rules applicable to deferred compensation under Code Section 409A), or other tax laws other than U.S. federal income tax law. The following is not intended or written to be used, and cannot be used, for the purposes of avoiding taxpayer penalties. Because individual circumstances may vary, the Company advises all participants to consult their own tax advisors concerning the tax implications of awards granted under the Stock Plan.

A recipient of a stock option or stock appreciation right will not have taxable income upon the grant of the stock option or stock appreciation right. For nonstatutory stock options and stock appreciation rights, the participant will recognize ordinary income upon exercise in an amount equal to the difference between the fair market value of the shares and the exercise price on the date of exercise. Any gain or loss recognized upon any later disposition of the shares will be a capital gain or loss.

The acquisition of shares upon exercise of an incentive stock option will not result in any taxable income to the participant, except, possibly, for purposes of the alternative minimum tax. If the incentive stock option shares are held until the later of two years after the date of grant and one year after the date of exercise (the "holding period"), then all gain above the exercise price paid for the shares which is realized upon the sale of the shares will be a long-term capital gain. However, if the incentive stock option shares are sold before the holding period is met, the participant will recognize ordinary income equal to the lesser of (i) the

amount by which the fair market value of the shares on the exercise date exceeds the exercise price, or (ii) the amount by which the sales price exceeds the exercise price, with any additional gain or loss being treated as a capital gain or loss.

For awards of restricted stock, unless the participant elects to be taxed at the time of receipt of the restricted stock by filing a Code Section 83(b) election with the Internal Revenue Service, the participant will not have taxable income upon the receipt of the award, but upon vesting will recognize ordinary income equal to the fair market value of the shares at the time of vesting less the amount paid for such shares (if any). Upon the later sale of the shares, the difference between the sales price and the fair market value of the shares on the vesting date will be a capital gain or loss.

A participant is not deemed to receive any taxable income at the time an award of RSUs is granted. When vested RSUs (and dividend equivalents, if any) are settled and distributed, the participant will recognize ordinary income equal to the amount of cash and/or the fair market value of shares received less the amount paid for such RSUs (if any). Any gain or loss recognized upon any later disposition of any shares received upon settlement of the RSUs will be a capital gain or loss.

At the discretion of the Stock Plan administrator, the Stock Plan allows a participant to satisfy his or her tax withholding requirements under federal and state tax laws in connection with the exercise or receipt of an award by electing to have shares withheld, and/or by delivering to the Company already-owned shares.

If the participant is an employee or former employee, the amount a participant recognizes as ordinary income in connection with any award is subject to withholding taxes (not applicable to incentive stock options) and the Company is allowed a tax deduction equal to the amount of ordinary income recognized by the participant. In addition, Code Section 162(m) contains special rules regarding the federal income tax deductibility of compensation paid to a company's chief executive officer and to each of a company's other three most highly compensated executive officers (other than the company's chief financial officer). The general rule is that annual compensation paid to any of these specified executives will be deductible only to the extent that it does not exceed $1,000,000. However, the Company can preserve the deductibility of certain compensation in excess of $1,000,000 if such compensation qualifies as "performance-based compensation" by complying with certain conditions imposed by the Code Section 162(m) rules (including the establishment of a maximum number of shares with respect to which awards may be granted to any one employee during one fiscal year) and if the material terms of such compensation are disclosed to and approved by the Company's stockholders. The Stock Plan is structured with the intention that compensation resulting from awards under the Stock Plan may qualify as "performance-based compensation" and, if so qualified, would be deductible.

**Awards Under the Stock Plan**

Awards under the Stock Plan will be made at the discretion of the Stock Plan administrator, except for Awards to non-employee directors, which will be made by the Board. Neither the Compensation Committee nor the Equity Committee has made any decisions on the amount and type of awards that are to be made under the Stock Plan to our employees in future years. The following table sets forth information concerning awards made during 2011 under the Stock Plan to the executive officers named in our Summary Compensation Table, executive officers as a group, non-executive directors as a group, and non-executive officer employees as a group. Please refer to the Grants of Plan-Based Awards table for further information on these grants. This information may not be indicative of awards that will be made under the Stock Plan in future years.

| Name and Position | Number of Shares Subject to Options Granted in 2011 | Number of Stock Awards Granted in 2011 | Dollar Value of Stock Awards |
|---|---|---|---|
| Lisa Gersh | | | |
| President and Chief Operating Officer | 700,000 | 400,000 $ | 1,731,500 |
| Charles Koppelman | | | |
| Former Executive Chairman and Principal Executive Officer | 90,000 | — $ | — |
| Kenneth West | | | |
| Chief Financial Officer | 175,000 | 110,000 $ | 241,600 |
| Allison Jacques | | | |
| Controller and Chief Accounting Officer (Interim principal financial officer) | 25,000 | 10,000 $ | 39,500 |
| Martha Stewart | | | |
| Founder/Chief Editorial, Media and Content Officer | 150,000 | — $ | — |
| Daniel Taitz | | | |
| Chief Administrative Officer and General Counsel | 300,000 | 170,000 $ | 332,700 |
| Patricia Pollack | | | |
| Senior Executive Vice President, Merchandising | 20,000 | 50,000 $ | 254,500 |
| Peter Hurwitz | | | |
| Former General Counsel | 75,000 | 25,000 $ | 98,750 |
| Executive Officers as a Group | 1,825,000 | 900,000 $ | 3,116,300 |
| Non-Executive Directors as a Group | 22,059 | 224,136 $ | 812,448 |
| Non-Executive Officer Employees as a Group | 718,500 | 103,750 $ | 407,825 |

**Equity Compensation Plan Information**

The following table provides information as of December 31, 2011 with respect to the shares of our common stock that may be issued under our existing equity compensation plans.

| Plan Category | (a) Number of securities to be issued upon exercise of outstanding options, warrants and rights | (b) Weighted average exercise price of outstanding options, warrants and rights | (c) Number of securities remaining available for future issuance under equity compensation plans (excluding securities reflected in column (a)) |
|---|---|---|---|
| Equity compensation plans approved by security holders | 8,658,475(1) | $    7.50 | 1,531,131(2) |
| Equity compensation plans not approved by security holders (3) | 416,667 | 12.59 | N/A |
| Total | 9,075,142 | | N/A |

(1) Includes 554,849 shares subject to awards the vesting of which are tied to service periods, 208,500 shares subject to awards the vesting of which are tied to satisfaction of performance goals and 540,000 shares subject to awards the vesting of which are tied to the satisfaction of pricing levels in respect of our Class A Common Stock. The weighted average exercise price reported in column (b) does not take these awards into account.

(2) Represents shares available for grant under the Stock Plan.

(3) Represents the remainder of a warrant issued in connection with a consulting agreement in August 2006; the shares subject to the warrant became fully vested in July 2007.

     27.    The Proxy, however, is deficient in its disclosure regarding Proposal 2, as follows:

    a.    The Proxy fails to disclose the criteria to implement Proposal 2 and why Proposal 2 would be in the best of interest of shareholders, given that the Company had, as of December 31, 2011, 1,531,131 shares available for future issuance under the Company's Equity Compensation Plan;

    b.    The Proxy fails to disclose how the Board determined the number of additional shares requested to be authorized;

    c.    The Proxy fails to disclose the potential equity value and/or cost of the issuance of the additional authorized shares;

    d.    The Proxy fails to disclose the dilutive impact that issuing additional shares (up to 4,557,272 shares) may have on existing shareholders. It does not disclose the extent of dilution or the amount of planned additional stock repurchases;

  e.  The Proxy fails to the projected stock grants or any other projections considered by the Board;

  f.  The Proxy fails to disclose the fair summary of any economist analysis or any opinion obtained in connection with Proposal 2; and

  g.  The Proxy does not disclose whether the Board will create a subcommittee to evaluate the risks and benefits for issuing the additional authorized shares requested. Similarly, the Proxy does not disclose the mandate such subcommittee would have if it has been created.

  28.  Not only is the Proxy materially misleading and incomplete for the reasons stated above, but the effects of Proposal 2 if approved are dramatic and merit full disclosure to Martha Stewart shareholders.  The graph below illustrates the dilutive effects of Proposal 2 in different scenarios of share price increase and not disclosed to shareholders:



  29.  Plaintiff and the Class will suffer irreparable damage unless Defendants are enjoined from continuing to breach their fiduciary duties by carrying out the Shareholder Vote on Proposal 2 without fully and accurately disclosing all information concerning Proposal 2.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action on her own behalf and as a class action on behalf of all holders of Martha Stewart common stock who are being and will be harmed by defendants' actions described below (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants.

31.     This action is properly maintainable as a class action.   The Class is so numerous that joinder of all members is impracticable.   As of March 2, 2012, there were 40,842,451 shares of Class A common stock outstanding.   The actual number of public shareholders of Martha Stewart will be ascertained through discovery.

32.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.   The common questions include the following:

(a)     whether defendants have breached their fiduciary duties of undivided loyalty, independence or due care, including disclosure, with respect to Plaintiff and the other members of the Class in connection with Proposal 2 and the issuance of the Proxy;

(b)     whether the Individual Defendants are engaging in self-dealing in connection with Proposal 2;

(c)     whether the Individual Defendants are unjustly enriching themselves and other insiders or affiliates of Martha Stewart;

(d)     whether defendants have breached any of their other fiduciary duties to Plaintiff and the other members of the Class in connection with Proposal 2 and the issuance of the Proxy, including the duties of good faith, diligence, honesty and fair dealing;

(e)     whether the defendants, in bad faith and for improper motives, are attempting to dilute current shareholders and failing to provide shareholders with adequate information to understand the potentially dilutive effect of Proposal 2; and

(f)     whether Plaintiff and the other members of the Class would suffer irreparable injury were the transactions complained of herein consummated without adequate disclosures.

33.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

34.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

35.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

36.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

37.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
### Claims for Breaches of Fiduciary Duties Against the Individual Defendants

38.     Plaintiff repeats and realleges each allegation set forth herein.

39.     The Individual Defendants have violated fiduciary duties of care, loyalty and good faith owed to the public shareholders of Martha Stewart; and have acted to potentially put their personal interests ahead of the interests of Martha Stewart shareholders.

40.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to dilute the holdings of Plaintiff and other members of the Class in Martha Stewart common stock without proper disclosure of the full impact of the dilution.

41.     Moreover, the Individual Defendants have failed to fully disclose to Plaintiff and the Class all material information necessary to make an informed decision regarding the Proposal 2.

42.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

43.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury if they are forced to vote on Proposal 2 without adequate information regarding its potentially dilutive effect.

44.     Plaintiff and the members of the Class have no adequate remedy at law.

**SECOND CAUSE OF ACTION**
**Claim Against Martha Stewart for Aiding and Abetting the**
**Individual Defendants' Breach of Fiduciary Duties**

45.     Plaintiff repeats and realleges each allegation set forth herein.

46.     Martha Stewart has acted and is acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to

Martha Stewart public shareholders, and has participated in such breaches of fiduciary duties by allowing the issuance of a materially misleading and incomplete Proxy.

47.     Martha Stewart knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  In so doing, Martha Stewart rendered substantial assistance in order to effectuate the Individual Defendants' plan to seek approval of Proposal 2 in the Proxy in breach of their fiduciary duties.

48.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor and in favor of the Class and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a class action and certifying Plaintiff as class representative and Plaintiff's counsel as class counsel;

B.     Declaring and decreeing that the Proxy was issued in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful;

C.     Declaring that the Company aided and abetted the Individual Defendants in connection with the issuance of a materially misleading and incomplete Proxy.

D.     Enjoining Defendants from consummating the Shareholder Vote on Proposal 2, unless and until the Company provides adequate disclosure regarding its cost and effects to Martha Stewart' shareholders.

E.     Awarding Plaintiff and the Class appropriate damages;

F.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees;

G.     Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all triable issues.

21

DATED:  April 17, 2012

**FARUQI & FARUQI, LLP**

By:

Juan E. Monteverde
**FARUQI & FARUQI, LLP**
369 Lexington Ave., Tenth Floor
New York, NY  10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

*Attorneys for Plaintiff*

# EXHIBIT B

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

HELENE HUTT, On Behalf of Herself and All
Others Similarly Situated,

                     Plaintiff,

      v.

MARTHA STEWART LIVING OMNIMEDIA,
INC., CHARLES A. KOPPELMAN,
CHARLOTTE BEERS, FRÉDÉRIC FEKKAI,
LISA GERSH, ARLEN KANTARIAN,
MICHAEL W. KRAMER, BILL ROSKIN,
CLAUDIA SLACIK, TODD SLOTKIN,
MARGARET M. SMYTH, MARTHA
STEWART, and DANIEL E. WALKER,

                  Defendants,

**Index No.**

**SUMMONS**

---

TO THE ABOVE-NAMED DEFENDANTS:

      You are hereby summoned and required to serve upon Plaintiff's attorneys an answer to the Complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

      The basis of the venue designated is New York County because: (i) a substantial portion of the transaction and wrongs complained of, including defendants' primary participation in the wrongful acts, occurred in this County; (ii) two of more of the defendants either reside in or maintain executive offices in this County; and (iii) defendants have received substantial

compensation in this County by engaging in numerous activities and conducting business, which had an effect in this County.

DATED:  April 17, 2012

**FARUQI & FARUQI, LLP**
Juan E. Monteverde

By:

Juan E. Monteverde
369 Lexington Avenue, 10th Floor
New York, NY 10017
Tel: 212-983-9330
Fax: 212-983-9331

*Attorneys for Plaintiff*

# EXHIBIT C

At IAS Part _63_ of the Supreme Court of the
State of New York, County of New York,
Commercial Division, held at 60 Centre Street,
New York, New York, on the _24th_ day of April,
2012

PRESENT:

**MOTION SEQUENCE # _001_**

HON.
JUSTICE OF THE SUPREME COURT

**SUPREME COURT OF NEW YORK**
**COUNTY OF NEW YORK**

Helene Hutt, On Behalf of Herself and All )
Others Similarly Situated, )
                      )
            Plaintiff, )
                      )    Index No.
     v. )    **ORDER TO SHOW CAUSE**
                      )
                      )
MARTHA STEWART LIVING OMNIMEDIA, )
INC., CHARLES A. KOPPELMAN, )
CHARLOTTE BEERS, FRÉDÉRIC FEKKAI, )
LISA GERSH, ARLEN KANTARIAN, )
MICHAEL W. KRAMER, BILL ROSKIN, )
CLAUDIA SLACIK, TODD SLOTKIN, )
MARGARET M. SMYTH, MARTHA )
STEWART, DANIEL E. WALKER, )
                      )
            Defendants, )
                      )

          Affirmation

Upon the annexed ~~Affidavit~~ of Juan E. Monteverde, ~~sworn~~ dated to on the _23_ day of April

2012, Plaintiff's memorandum of law and upon all the papers had herein, it is hereby:

        ORDERED, that all parties in the above-captioned action show cause before this Court at

Commercial Division Part _53_ thereof, in Room _238_, 60 Centre Street, New York, New York,

on the _2nd_ day of ~~April~~ _May_, 2012, at _11_ a.m./~~p.m.~~, or as soon thereafter as counsel may be heard, why

an order should not be made:

1.   Granting Plaintiff leave to obtain certain limited discovery from Defendants on expedited basis; and

2.   Directing Defendants in the above-captioned action to produce all documents requested in Plaintiff's Request For The Production of Documents Directed To All Defendants and subpoenas issued in this action, on a rolling basis, production to be completed by no later than April ____, 2012; and

3.   Directing that the parties appear for a case management conference on April ____, 2012 for the purpose of scheduling depositions to take place promptly after production of documents; and

4.   Granting such other, further or different relief as the Court deems just and proper.

ORDERED that service by overnight mail of a copy of this order together with the papers on which it is based upon the parties herein on or before April 25, 2012, shall be deemed good and sufficient service. Answering papers, if any shall be served upon Plaintiff's counsel on or before April ____, 2012.

ENTERED

_____

Hon. **CHARLES E. RAMOS**

**NO PREVIOUS APPLICATION HAS BEEN MADE FOR THE RELIEF REQUESTED HEREIN.**

BTW

*(INITIAL)*